UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
OCT 12 2005



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 05-40073 |
| Plaintiff, | * | |
| -vs- | * | MEMORANDUM OPINION AND ORDER |
| AUDREY L. KLOSTER, | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This case was scheduled for trial on September 7, 2005. Counsel of record before September 2, 2005, were Michael Ridgeway, Assistant United States Attorney ("AUSA"), and Michael Butler representing the Defendant Audrey Kloster. On September 2, 2005, a Notice of Appearance was filed by AUSA David Zuercher. On the same date, a Motion to Dismiss Indictment was filed by the United States, Doc. 41, seeking a dismissal of the indictment without prejudice. Defendant filed a response to the motion, Doc. 43, moving that the dismissal be with prejudice and requesting an evidentiary hearing. An evidentiary hearing was held on October 7, 2005, with the government appearing by AUSA David Zuercher, and the Defendant appearing in person and with her counsel, Michael Butler.

In an Affidavit filed by defense counsel, Doc. 44, he explained the terms of an agreement he had with Ridgeway concerning a meeting conducted between the government and the Defendant. During the evidentiary hearing, Butler further explained, under oath and subject to cross examination, the terms of the agreement. In addition, the government called as witnesses Matt Miller, the FBI Agent investigating this case, and Ridgeway. For the reasons set forth below, the Indictment will be dismissed with prejudice.

## BACKGROUND

The following are the Court's findings of fact based upon the record in this case, including the evidentiary hearing held on October 7, 2005. Defendant was indicted on four counts of bank fraud. The trial was scheduled on September 7, 2005. Due to the indictment, the Defendant was forced to take an unpaid leave of absence from her employer, First American Bank and Trust. The Defendant refused to consent to at least one continuance suggested by the government. When she and Butler went through the complete bank files involved in the Indictment, they discovered exculpatory evidence. During a meeting on August 17, 2005, between Ridgeway, Butler and Butler's assistant, Butler suggested to Ridgeway that the investigation had not been complete and that there was exculpatory evidence in the bank files. Butler suggested they have a meeting with the Defendant under certain conditions, during which meeting the Defendant would explain the exculpatory nature of the evidence. Ridgeway expressed an interest in such a meeting, but said he would have to get back to Butler about that. During the August 17 meeting, Ridgeway mentioned that a pretrial diversion may be a possibility but that he could not offer it without having permission from his supervisor, AUSA Dennis Holmes. Butler informed Ridgeway that the Defendant would not be interested in a plea bargain.

On either August 23 or 24, 2005, Ridgeway contacted Butler expressing an interest about meeting with him and the Defendant to discuss the evidence discovered by Defendant on August 26. Ridgeway and Butler discussed the terms of the agreement to meet during several telephone calls between the time Ridgeway first contacted Butler and August 26. The purpose of the meeting was for Defendant to explain the exculpatory evidence in the record to show the government there was no basis for the charges brought against her. Butler, a criminal defense lawyer with 19 years of experience in criminal law, expressed his concern to Ridgeway that if there was not going to be a dismissal of the indictment his client would not be willing to meet. Ridgeway, an experienced prosecutor with five years' experience as a state prosecutor and six years working in the criminal division of the United States Attorneys Office, informed Butler that he believed that if he in good faith believed the indictment should be dismissed and he so recommended that to AUSA Holmes, that Holmes would follow that recommendation, but that it was ultimately Holmes' decision. The

parties' agreement was that if Defendant was able to convince Ridgeway that the case should be dismissed, Ridgeway would make that recommendation, with both Ridgeway and Butler believing that Ridgeway's recommendation would be followed by AUSA Holmes. Although the parties did not mention the word "immunity," both Ridgeway and Butler agreed that there would be no further prosecution of the Defendant if the Indictment were dismissed. Thus, the parties understood that if the Indictment were dismissed, it would be with prejudice.

The other term of the agreement, which was equally important to the Defendant given that she was forced to take an unpaid leave of absence from her employment with the Bank, is that if the Indictment was not going to be dismissed, that the trial would occur on September 7, 2005, as scheduled. Defendant had refused as least one earlier suggestion by the government that there be a continuance and was adamant that this case go to trial on September 7 if it was not going to be dismissed with no further prosecution.

Having reached the above agreement, the parties met on August 26, 2005. Present at the meeting were Ridgeway, FBI agent Miller, two federal bank auditors or examiners, Butler, the Defendant and Mike Walstrom, Defendant's expert witness. Before the meeting on August 26, Ridgeway faxed the United States Attorneys Office's standard proffer agreement to Butler. After some introductions on August 26, Ridgeway asked Butler if he had time to go over the proffer agreement with the Defendant. Butler informed Ridgeway that the standard proffer agreement did not apply to the meeting they were going to have and that the parties did not need that agreement. Thus, the proffer agreement was not signed. Butler was not concerned about having a proffer agreement, because the purpose of the meeting was to explain to the government the exculpatory evidence in the record and he was not concerned that the Defendant would incriminate herself during the meeting. The meeting proceeded with Defendant doing most of the talking. She answered all questions posed to her by Ridgeway, Miller and Butler. In addition, defense expert Walstrom commented upon the evidence and answered questions. The meeting lasted nearly four hours.

3

On Monday, August 29, 2005, six working days before the scheduled trial date, Ridgeway met with Holmes and recommended dismissal of the Indictment. There was no immediate decision communicated to Butler. Thus, with only a few days before the trial Butler issued subpoenas for the September 7 trial. The government did not issue subpoenas. The next communication Butler received was a phone call on the morning of September 2, 2005, from Ridgeway explaining that he had made his recommendation and that the matter was then out of his hands. Shortly thereafter, Butler received a phone call from AUSA Zuercher informing him that the Government would dismiss the Indictment without prejudice and seek a new Indictment against the Defendant. The pending motions were then filed by the parties and the trial scheduled for September 7, 2005 was cancelled.

## DISCUSSION

The Court finds that although the parties did not use the term "immunity" while establishing the terms of their agreement, the cases analyzing immunity agreements are analogous to the agreement reached in this case. The Eighth Circuit recognized that "[c]ooperation-immunity agreements are contractual in nature and subject to contract law standards." *United States v. Johnson*, 861 F.2d 510, 512 (8th Cir. 1988). Although somewhat analogous to a plea agreement, "[w]ith an agreement not to prosecute, parties agree that the defendant's cooperation is sufficient consideration for the government's promise of immunity." *Id.* In the present case, Defendant's performance in answering all questions posed to her by Ridgeway and the FBI Agent assigned to the case, is sufficient consideration for the government's promise. Moreover, the agreement in this case was not a plea bargain arrangement in which the trial court was a participant. "Rather, it was a prosecutorial agreement, the inviolability of which rested completely in the province of the government prosecutors, who have the sole power and responsibility to institute criminal proceedings." *United States v. Minnesota Mining and Mfg. Co.*, 551 F.2d 1106, 1109 (8th Cir. 1977). The remedy for breach of such a promise rests in the discretion of the trial court, and pursuant to Eighth Circuit law, "a dismissal of an indictment is appropriate under certain circumstances." *Johnson*, 861 F.2d at 512; *see Minnesota Mining*, 551 F.2d at 1111-12

As mentioned above, the parties' agreement was that if Defendant was able to convince Ridgeway that the case should be dismissed, Ridgeway would make that recommendation to his supervisor AUSA Holmes, with both Ridgeway and Butler believing that Ridgeway's recommendation would be followed by AUSA Holmes. Although the parties did not mention the word "immunity," both Ridgeway and Butler agreed that there would be no further prosecution of the Defendant if the Indictment were dismissed. Thus, the parties understood that if the Indictment were dismissed, it would be with prejudice. The Court finds there was a meeting of the minds.

The Eighth Circuit recognized that, "[o]nly a material breach [of an immunity agreement] is sufficient to excuse [a party] of its performance." *United States v. Crawford*, 20 F.3d 933, 935 (8th Cir. 1994). "'In determining whether a failure to render ... performance is material, the following circumstances are significant: ... the extent to which the injured party will be deprived of the benefit which he reasonably expected; ... the likelihood that the party failing to perform ... will cure his failure, taking account of all the circumstances; [and] ... the extent to which the behavior of the party failing to perform ... comports with standards of good faith and fair dealing.'" *Crawford*, 20 F.3d at 935 (quoting *Restatement (Second) of Contracts* § 241 at 237 (1981)).

If the Indictment is not dismissed with prejudice, the Defendant will be deprived of the benefit she reasonably expected. When she entered the agreement with Ridgeway, she was confident that she would be able to convince Ridgeway the Indictment should be dismissed. Her expectation that the Indictment would be dismissed if she convinced Ridgeway it should be dismissed was reasonable given Ridgeway's belief that his recommendation would be followed by AUSA Holmes. Moreover, Ridgeway's belief that his recommendation would be followed by AUSA Holmes was reasonable given Ridgeway's extensive experience as a state and federal prosecutor and his intimate knowledge of the prosecution's evidence. It is clear that the government has no intention of curing its failure to dismiss the Indictment with prejudice. While the Court finds Ridgeway's behavior in recommending dismissal of the Indictment comports with standards of good faith and fair dealing, the Court does not find the government's continued prosecution of this case, considering the Defendant's detrimental reliance on the agreement, comports with standards of good faith and fair

5

dealing. The Court finds that Ridgeway, having concluded in good faith that the prosecution should not proceed, made the recommendation that the Indictment be dismissed. Ridgeway, however, was surprised by Holmes' refusal to follow his recommendation. Given both Ridgeway's and Butler's understanding of the agreement, the Court finds there was a material breach of the agreement when the government refused to dismiss the Indictment with prejudice.

Defendant is entitled to specific performance of an agreement not to prosecute unless "1) the government made no firm promise of immunity, 2) the defendant failed to fulfill her part of the bargain, 3) the government's offer of immunity or the defendant's acceptance was based on a mistake in law or fact, 4) the term for which the defendant seeks specific performance was not a term of the contract, 5) the government's decision to seek an indictment was made in good faith, 6) the government's breach resulted in no prejudice to the defendant; or 7) specific enforcement would have an adverse impact on the public." *Johnson*, 861 F.2d at 512-13 (citations omitted).

The Court finds that both Butler and Ridgeway reasonably believed that if Ridgeway in good faith believed the Indictment should be dismissed and made that recommendation, that AUSA Holmes would follow the recommendation and the Indictment would be dismissed with prejudice. Thus, although the parties did not mention the word "immunity," given the understanding between Butler and Ridgeway, the Court finds the government did make a firm promise not to prosecute Defendant if Ridgeway was convinced the Indictment should be dismissed. Both Butler and Ridgeway have often been before this Court for over six years, and the Court has a high opinion of both counsel. The Court is convinced that if Butler believed Ridgeway could not obtain a dismissal of the Indictment, Butler would not have gone through with the meeting and disclosed his defense theory as well as the specific exculpatory evidence on which the defense would rely at trial. Moreover, the Court is further convinced that if Ridgeway did not believe he could obtain a dismissal of the Indictment if he made such a recommendation, he would not have proceeded with the meeting either.

6

In this case there is no question that Defendant fulfilled her part of the bargain. Defendant's performance in answering all questions posed to her by Ridgeway and the FBI Agent assigned to the case fulfilled her part of the bargain.

The third consideration involves the issue of mistake of fact or law. Both parties to the agreement believed if Ridgeway made a recommendation that the case be dismissed, the Indictment would be dismissed with prejudice. This was a mistake of both parties at the time the agreement was reached as to a basic assumption on which the agreement was made and it had a material effect on the agreed exchange of performances. *See Restatement (Second) of Contracts*, § 152(1) (1981). Thus, the parties were operating under a mistake as to Ridgeway's ability to dismiss the Indictment with prejudice. Despite the existence of a mistake, Defendant is entitled to enforcement of the agreement on the basis of detrimental reliance, which is explained below. *See Restatement (Second) of Contracts* § 90 at 242.

As to the fourth consideration, the Defendant seeks a dismissal with prejudice, and the Court finds that a dismissal with prejudice was a term of the contract. Regarding the fifth consideration, the Court has no evidence from which to find the government's decision to seek the initial Indictment was not made in good faith. But as explained above, the Court does not find that the government's desire to dismiss without prejudice to seek a new indictment, after Defendant disclosed her evidence and theories, is in good faith.

As to the sixth consideration, the Defendant suffered great prejudice in this case. The Defendant disclosed to the government her entire defense theory and specifically explained several pieces of evidence that she claimed were exculpatory. Moreover, the defense expert was present during the meeting and commented on the evidence as well as answered questions. Ridgeway concluded after viewing Defendant's evidence that he could not, in good faith, continue the prosecution of this case. The FBI agent who investigated this case participated in the meeting and surely would assist and testify in any subsequent prosecution of the Defendant. The Court is well aware from having retried criminal cases, that disclosure of a defendant's evidence and theory to the

prosecution aides the prosecution. In the retrials conducted before the Court, the prosecution's case has always been stronger the second time because the first trial exposes weaknesses in the prosecutions's case for which the prosecutor then has time to be better prepared to counter at the second trial. In the present case, the prosecution would have another advantage, that being that a new indictment could be tailored in light of what else was learned at the meeting. Thus, the Court concludes the Defendant experienced great prejudice from the breach of the agreement by failing to dismiss the Indictment with prejudice.

The final consideration, impact on the public, weighs in favor of ordering specific performance. If agreements not to prosecute will not be honored by the government, the incentive to enter into such agreements will diminish as will the incentive to explore various means of appropriate case disposition based upon complete factual disclosure. *See United States v. Carter*, 454 F.2d 426, 428 (4th Cir. 1972) (explaining that failure to honor agreements by "apparently authorized agents" of the United States puts "[a]t stake ... the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government.").

Given that Ridgeway and Butler were mistaken about Ridgeway's ability to obtain a dismissal with prejudice, the Court finds Defendant is entitled to dismissal with prejudice due to her detrimental reliance. The Restatement (Second) of Contracts § 154 provides that a party bears the risk of mistake when "the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." *Restatement (Second) of Contracts*, § 154 at 402-03 (1981). In this case, the Court finds it is reasonable to allocate the risk of mistake to the government as Ridgeway had the authority to enter into this agreement with the Defendant and it was objectively reasonable for both Ridgeway and the Defendant to believe that if Ridgeway recommended a dismissal of the Indictment with prejudice, that recommendation would be followed given Ridgeway's experience as a prosecutor and his intimate knowledge of the facts of this case. The relief allowed for mistake in the formation of a contract includes protection of a party's reliance interests. *Restatement (Second) of Contracts*, § 158(2) at 419-20. Section 90 of the Restatement provides that, "[a] promise

8

which the promisor should reasonably expect to induce action ... on the part of the promisee ... and which does induce such action ... is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." *Restatement (Second) of Contracts*, § 90(1) at 242.

The Court finds that the Defendant acted in reliance upon the agreement with the government to her detriment in performing the conditions required by the government. She disclosed all of her exculpatory evidence and her defense theories to the government, answered all of the questions posed to her as well as allowed her expert witness to be questioned by the investigating FBI agent and the prosecutor. Having found that both Ridgeway and the Defendant believed the Indictment would be dismissed with prejudice if Ridgeway made the recommendation and that the Defendant fully discharged her obligations under the agreement, "the Government is bound to fulfill its responsibility under the agreement." *Minnesota Mining*, 551 F.2d at 1111. As stated by the Fourth Circuit in a case in which a United States Attorney in one jurisdiction promised that the sole prosecution against the defendant would be a misdemeanor charge in that jurisdiction, thereby binding the United States Attorney in another jurisdiction, "[t]here is more at stake than just the liberty of this defendant. At stake is the honor of the government [,] public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government." *Carter*, 454 F.2d at 428. For all of the reasons set forth above, the Court finds that injustice can only be avoided by enforcement of the agreement to dismiss the Indictment with prejudice.

In addition to finding that the Defendant is entitled to specific performance of the agreement with the government to dismiss the Indictment with prejudice, the Court finds that the Defendant is entitled to dismissal of the Indictment with prejudice pursuant to the broader concept of "equitable immunity." *See United States v. Lua*, 990 F.Supp. 704, 709-10 (N.D. Iowa 1998) (explaining requirements of equitable immunity). "Agreements to exchange cooperation for transactional immunity are governed by traditional principles of contract law, ... and, therefore, may be express or implied. While a contract is made when the parties verbally express their mutual assent to its

9

essential terms, it may also be implied when the parties' conduct manifests their agreement." *United States v. McHan*, 101 F.3d 1027, 1034 (4th Cir. 1996) (citing *Restatement (Second) of Contracts* § 19 (1979)). The Eighth Circuit has not ruled on whether the concept of equitable immunity is recognized in this Circuit. It did, however, mention the existence of the concept in *Reed v. United States*, 106 F.3d 231, 235-36 (8th Cir. 1997):

> Although the concept of equitable immunity is not well defined, *Rowe v. Griffin*, 676 F.2d 524, 526 n.3 (11th Cir. 1982), " the underlying principle is that when a promise of immunity induces a defendant to ... cooperate with the government to his [or her] detriment, due process requires that the prosecutor's promise be fulfilled." *United States v. Fuzer*, 18 F.3d 517, 521 (7th Cir. 1994).

The promise by Ridgeway to evaluate the evidence and theories presented by the Defendant and to determine in good faith whether the Indictment should be dismissed with prejudice along with his belief and the Defendant's belief that Ridgeway could obtain a dismissal with prejudice induced the Defendant to cooperate with the government to her detriment. Although the Defendant first made the suggestion of having such a meeting, it was the government that contacted the Defendant approximately two weeks before trial seeking to meet with the Defendant. Only after defense counsel and the Defendant were convinced that Ridgeway could obtain a dismissal with prejudice if he made the recommendation, did the Defendant agree to meet with the government on August 26. Moreover, Defendant fulfilled her obligations under the contract and the government is seeking to reindict her on offenses directly related to the offenses that were the subject of the August 26 meeting. Accordingly, due process requires that the Indictment be dismissed with prejudice in compliance with the agreement between Ridgeway and the Defendant.

If evaluation of the seven considerations did not lead to the conclusion that the Defendant was entitled to specific performance of the agreement to dismiss with prejudice or the Defendant is not entitled to equitable immunity, the alternative issue raised by the Defendant as to a breach of the agreement for failure to go to trial on September 7, 2005, needs to be addressed. The Court finds it was a separate material breach by the government of the terms of the agreement between Ridgeway and the Defendant for the case not to proceed to trial on September 7, 2005, because the Indictment

10

was not dismissed with prejudice and the alternative condition of going to trial on September 7 was not met. This was a very important term of the agreement to the Defendant because she believed she could obtain an acquittal on the charges set forth in the Indictment and she was on a forced *unpaid* leave of absence from her employment while the charges were pending. This alternative portion of the agreement was to be operative only if Ridgeway (and impliedly Holmes) was not convinced that the charges should be dismissed. There is no question but that Ridgeway had the authority as the trial attorney to, on his own, enter into this portion of the agreement.

When Butler did not receive a response from the government the week before the scheduled trial regarding the dismissal of the Indictment, he began issuing subpoenas for the trial and continued with his trial preparation. The government, on the other hand, did not issue subpoenas and it appears it did not continue trial preparation in light of the anticipated motion to dismiss without prejudice to obtain a new indictment. Analyzing the *Crawford* factors set forth above for determining whether a material breach has occurred, the Court finds the government's failure to go to trial on September 7 was a material breach of the agreement between the government and the Defendant. *See Crawford*, 20 F.3d at 935 (explaining elements of a material breach). The Defendant was deprived of the benefit she reasonably expected, i.e., that if the Indictment were not dismissed with prejudice, she would go to trial on September 7 on the charges contained in the Indictment. The government cannot cure its failure to go to trial on September 7. Moreover, given the nature of the agreement, the government's failure to go to trial on September 7 as promised and its decision to obtain a new indictment after Defendant disclosed all of her exculpatory evidence and defense theory on the pending charges does not comport with standards of good faith and fair dealing.

The remedy for breach of the agreement to go to trial as charged on September 7, 2005, is problematic given the passage of time. Given the unique purpose and terms of this portion of the agreement, and the passage of time, the Court concludes that it would not be an adequate remedy to allow the government to go to trial, if at all, based upon a reindictment of the charges identical to those contained in the pending Indictment. That is no adequate remedy because if the Defendant was reindicted, a trial could not take place for several months and during that time Defendant would once

11

again be unable to practice her livelihood in the banking business. This is a separate basis for the dismissal with prejudice, no other appropriate remedy being available. Accordingly,

IT IS ORDERED:

1. That the United States' Motion to Dismiss without prejudice, Doc. 41, is denied.

2. That the Defendant's Motion to Dismiss the indictment with prejudice, Doc. 43, is granted and the Indictment is dismissed with prejudice.

Dated this 12th day of October, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
(SEAL)   DEPUTY

12